IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| **JOE HAND PROMOTIONS, INC.,**<br><br>          **Plaintiff**,<br><br>v.<br><br>**TROTTER'S ON THE RIVER, LLC, et al.,**<br><br>          **Defendants**. | Case No. 25-2105-DDC-TJJ |

## MEMORANDUM AND ORDER

Plaintiff Joe Hand Promotions, Inc. moves for default judgment against defendants Trotter's on the River, LLC and Charles H. Trotter. Doc. 9. Defendants operate, maintain, or control the establishment known as Trotter's on the River in Atchison, Kansas. Plaintiff alleges that defendants unlawfully exhibited nine Ultimate Fighting Championship (UFC) or boxing pay-per-view broadcasts at defendants' establishment without paying plaintiff the requisite commercial sublicense fees. Plaintiff asserts that it holds the sole and exclusive license to distribute and authorize the public display of the nine specified programs. But, plaintiff alleges, defendants circumvented the commercial sublicensing requirement by securing the programs under terms for residential, personal, or non-commercial use. Then, defendants allegedly linked the establishment's television screens to those non-commercial signals to exhibit the programs commercially. Plaintiff asserts that defendants' actions violate the Communications Act of 1934, as amended, provisions 47 U.S.C. §§ 553 and 605. And plaintiff seeks statutory and enhanced damages as an aggrieved party under the Act's civil action provisions.

Defendants never answered or otherwise pleaded. Plaintiff thus moves for a default judgment to secure $15,297.50 in statutory damages; $76,487.50 in enhanced damages, and $2,095 in costs and attorney fees. Doc. 9-1 at 13. The court grants plaintiff's motion in part and denies it in part—limiting the enhanced damages to treble the statutory damages. It reaches this decision after (i) ensuring its jurisdiction; (ii) determining that plaintiff's uncontested facts constitute legitimate causes of action; and (iii) concluding plaintiff's declaration and documentary evidence furnish a basis for statutory damages, some of the requested enhanced damages, and an award for attorney fees and costs. The court explains its conclusions, below. But first, it recites the background facts, taken from the Complaint.

## I.     Background

Starting in the summer of 2023, defendants broadcast nine programs at their establishment without securing a commercial license from plaintiff to distribute or publicly display the programs. Doc. 1 at 1–2, 3–4 (Compl. ¶¶ 3, 9). Those programs, and the date of their respective broadcasts, are as follows:

- *UFC 291: Poirier vs. Gaethje 2* telecast nationwide on July 29, 2023,
- *Jake Paul vs. Nate Diaz* telecast nationwide on August 5, 2023,
- *UFC 292: Sterling vs. O'Malley* telecast nationwide on August 19, 2023,
- *UFC 300: Pereira vs. Hill* telecast nationwide on April 13, 2024,
- *UFC 304: Edwards vs. Muhammad 2* telecast nationwide on July 27, 2024,
- *UFC 306: O'Malley vs. Dvalishvili* telecast nationwide on September 14, 2024,
- *UFC 307: Pereira vs. Rountree Jr.* telecast nationwide on October 5, 2024,
- *UFC 309: Jones vs. Miocic* telecast nationwide on November 16, 2024,
- *UFC 311: Makhachev vs. Moicano* telecast nationwide on January 18, 2025.

*Id.* at 1–2 (Compl. ¶ 3). Since 2001, plaintiff has served as the exclusive domestic commercial distributor for UFC, a mixed martial arts promotion company. *Id.* at 3 (Compl. ¶ 6). In this capacity, plaintiff has entered into agreements with various commercial establishments in Kansas, permitting those establishments to exhibit UFC and boxing programs to their patrons in

exchange for a commercial sublicense fee. *Id.* (Compl. ¶¶ 8–9). Plaintiff purchased the commercial exhibition rights for the nine events at issue here. Doc. 9-2 at 1–2 (Hand Decl. ¶ 3). Defendants exhibited the nine programs, however, without signing a contract with plaintiff or paying the fee. Doc. 1 at 3 (Compl. ¶ 9); Doc. 9-2 at 3 (Hand Decl. ¶ 11).

Plaintiff has retained auditors and law enforcement personnel to detect and identify when an establishment exhibits a program without paying the commercial licensing fee. Doc. 9-2 at 2 (Hand Decl. ¶ 6). Once such auditor, Mark Aaron, attested that he visited defendants' establishment on July 29, 2023, and November 16, 2024, and personally observed the public display of the at-issue programs on those dates. Doc. 9-10 at 1 (2023 Aaron Aff.); Doc. 9-11 at 1 (2024 Aaron Aff.). Additionally, plaintiff submitted screenshots demonstrating that defendants advertised eight of the nine program broadcasts on social media, while promoting drink deals and other menu items.[1] Doc. 1 at 5 (Compl. ¶ 13); Doc. 9-13 at 1–12 (Ex. A). And plaintiff alleges that the establishment sold food and drink on the dates and during the broadcasts of the programs. Doc. 1 at 5 (Compl. ¶ 13). Plaintiff thus alleges that defendants broadcast the programs "for purposes of commercial advantage or private financial gain." *Id.* at 6 (Compl. ¶ 19); Doc. 9-2 at 4 (Hand Decl. ¶ 16). And so, plaintiff asserts, it's entitled to statutory damages as an aggrieved party, Doc. 1 at 6 (Compl. ¶ 23), and enhanced damages for defendants' willful acts, Doc. 9-1 at 11, under the Communications Act of 1934.

## II.     Legal Standard

Federal Rule of Civil Procedure 55 provides a two-step process for securing a default judgment. Plaintiff has satisfied the first step already. The Clerk has entered default against

---

[1] Plaintiff produces no social media posts demonstrating that the establishment advertised for UFC 309, the November 16, 2024, fight. *See generally* Doc. 9-13 (Ex. A). But that's one of two dates where plaintiff's auditor attended the event in-person and attested to the establishment's broadcast of that fight. *See* Doc. 9-11 (2024 Aaron Aff.).

defendants under Rule 55(a) because they "failed to plead or otherwise defend" in this case. Doc. 8 at 1. So, this Order addresses the process's second step, outlined in Rule 55(b)(2). At step two, whether to enter "default judgment is committed to the sound discretion of the district court[.]" *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016). In exercising this discretion, the court remains mindful that "[d]efault judgments are a harsh sanction." *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991). They are justified "only when the adversary process has been halted because of an essentially unresponsive party." *Id.* (quotation cleaned up). Otherwise, "the diligent party" may suffer "interminable delay and continued uncertainty [about] his rights." *Id.* at 733 (quotation cleaned up).

Before entering a default judgment against defendants, the "court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986); *see also Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794, 797 (10th Cir. 2008) ("A default judgment in a civil case is void if there is no personal jurisdiction over the defendant." (quotation cleaned up)).

When deciding whether to enter a default judgment, the court must "t[ake] as true all factual allegations in the complaint, except those pertaining to the amount of damages." *Archer v. Eiland*, 64 F. App'x 676, 679 (10th Cir. 2003). "Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief." *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1274 (D. Kan. 2016) (quotation cleaned up). "In addition, the court accepts the undisputed facts set forth in any affidavits and exhibits attached to the complaint or submitted in support of the motion for default judgment." *CapFinancial Props. CV1, LLC v. Highway 210, LLC*, No. 09-2465-DJW, 2011 WL 1303323, at *2 (D. Kan. Apr. 1, 2011). Nonetheless, "'it remains for the court to consider whether the

4

unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quoting 10A *Wright & Miller's Federal Practice and Procedure* § 2688 (3d ed. 1998)). That is, there "must be a sufficient basis in the pleadings for the judgment entered." *Id.* (quotation cleaned up). Finally, the court may award damages "only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *DeMarsh v. Tornado Innovations*, *L.P.*, No. 08-2588-JWL, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009) (quotation cleaned up).

The court begins with jurisdiction, ensuring it has subject matter jurisdiction over the dispute and personal jurisdiction over defendants. It then evaluates whether there's "a sufficient basis in the pleadings for the judgment entered." *Bixler*, 596 F.3d at 762 (quotation cleaned up). In so doing, the court finds that plaintiff's Complaint satisfies the prima facie elements to establish it is an aggrieved party under 47 U.S.C. §§ 553 and 605. Having determined that plaintiff thus is entitled to recover damages, the court then takes up the questions of statutory and enhanced damages and concludes with plaintiff's attorney fee and costs request. The court finds that "the record adequately reflects the basis for" the statutory damages award requested. *DeMarsh*, 2009 WL 3720180, at *2 (quotation cleaned up). But, for reasons it explains below, the court concludes that it should limit plaintiff's enhanced damages to treble the statutory damages. Finally, the court finds the attorney fee and costs request reasonable.

### III.     Jurisdiction

####       A.     Subject Matter Jurisdiction

Title 28 U.S.C. § 1331 assigns original jurisdiction to federal courts over "all civil actions arising under the Constitution, laws, or treaties of the United States." Here, plaintiff brings its

action under the Communications Act of 1934.  Plaintiff's suit thus arises under federal law and the court has subject matter jurisdiction over the action.

> **B.**     **Personal Jurisdiction**

The court shouldn't enter a judgment of default "without a determination that the court has jurisdiction over the defendant." *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997).  A "plaintiff need only make a *prima facie* showing" of personal jurisdiction "if the motion is decided only on the basis of the parties' affidavits and other written materials"—as it is here.  *Id.* at 773.  Here, plaintiff brings claims against both an individual and a business entity, specifically an LLC.  Doc. 1 at 2 (Compl. ¶¶ 4–5).

"'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]'"  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).  The Complaint alleges that individual defendant Charles H. Trotter resides here in Kansas.  Doc. 1 at 2 (Compl. ¶ 5).  The court concludes this fact suffices to provide a prima facie showing of domicile.

The general personal jurisdiction analysis for the defendant who is an LLC proves slightly more complicated.  That's so because the Tenth Circuit distinguishes LLCs from corporations—at least for purposes of establishing diversity of citizenship as part of the subject matter jurisdiction analysis.  *See Mgmt. Nominees, Inc. v. Alderney Invs., LLC*, 813 F.3d 1321, 1324 (10th Cir. 2016); *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237–38 (10th Cir. 2015).  In the diversity jurisdiction context, a court determines an LLC's citizenship by the citizenship of its members, not its "state of organization" or "the state of its primary business operations."  *Siloam Springs*, 781 F.3d at 1238.  But courts have struggled to determine whether to apply the corporation-LLC distinction in the general personal jurisdiction context or, instead, whether to apply the paradigmatic test for a corporation's general personal

jurisdiction to an LLC. *See, e.g.*, *Avus Designs, Inc. v. Grezxx, LLC*, 644 F. Supp. 3d 963, 977–82 (D. Wyo. 2022) (discussing unresolved issue of LLC "at home" analysis when assessing general personal jurisdiction for entry of default judgment and concluding LLC is "'at home' in its state of organization for purposes of general personal jurisdiction").

Here, the result remains the same under either approach. If the Circuit's distinction between LLCs and corporations transfers from a diversity jurisdiction analysis to the general personal jurisdiction analysis, then the court must examine the LLC's members. *See Mgmt. Nominees*, 813 F.3d at 1324 ("[I]n determining the citizenship of an unincorporated association for purposes of diversity, federal courts must include all the entities' members." (quotation cleaned up)). Plaintiff's exhibits suggest that Charles H. Trotter is the sole member of Trotter's on the River, LLC. *See* Doc. 9-15 at 2 (2023 LLC Annual Report); Doc. 9-16 at 2 (Kansas Secretary of State Business Information Report). Alternatively, if state of incorporation and principal place of business provide the appropriate test, the court also possesses personal jurisdiction over the defendant LLC. *See* Doc. 9-15 at 2 (2023 LLC Annual Report) (identifying Kansas as defendant LLC's state of organization); Doc. 9-16 at 2 (Kansas Secretary of State Business Information Report) (identifying defendant LLC's principal office address as Atchison, Kansas). In sum, all roads lead to Kansas under either personal jurisdiction test.

One final consideration rounds out the court's personal jurisdiction analysis—service of process. "[S]ervice of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served." *Okla. Radio Assocs. v. FDIC*, 969 F.2d 940, 943 (10th Cir. 1992) (citing *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)). In this case, plaintiff served individual defendant Charles H. Trotter personally through a process server on March 13, 2025, in

Atchison, Kansas.  Doc. 6 at 2.  Service in this fashion complies with Federal Rule of Civil Procedure 4(e)(2)(A).  This rule allows for service on an individual by "delivering a copy of the summons and of the complaint to the individual personally[.]"  *Id.*  And plaintiff served defendant Trotter's on the River, LLC by serving its registered agent—Charles H. Trotter—on the same day.  Plaintiff thus complied with Rule 4(h)(1)(B) because this rule permits delivery to an "agent authorized by appointment or by law to receive service of process[.]"  Doc. 5 at 2; *see also* Doc. 9-14 at 2 (identifying Mr. Trotter as LLC's process agent).  Service thus was proper here, and so the court has asserted personal jurisdiction over defendants.

Satisfied that the court has original jurisdiction over this matter and personal jurisdiction over defendants, the court turns next to plaintiff's right to recover.

## IV.     Plaintiff's Claims

Plaintiff's Complaint alleges defendants violated both 47 U.S.C. §§ 553 and 605 by pirating the nine events and broadcasting them commercially.  Our Circuit, in an unpublished opinion, distinguished between the two statutes based on the type of piracy—with § 553 applying strictly to piracy of cable communications and § 605 to piracy of satellite communications.  *J&J Sports Prods., Inc. v. Brady*, 672 F. App'x 798, 800 (10th Cir. 2016).[2]  In its supporting memorandum, plaintiff acknowledges that an aggrieved party may recover damages under just one section.  Doc. 9-1 at 5 (citing *Kingvision Pay-Per-View Corp. v. Wright*, No. 06-CV-892-T-30MAP, 2006 WL 4756450, at *2 (M.D. Fla. Oct. 27, 2006)); *see also Joe Hand Promotions, Inc. v. Uno Mas LLC*, No. 25-1036-JWL, 2025 WL 2390417, at *1 (D. Kan.

---

[2]     The Circuit identified a split of authority whether § 605 covers both cable and satellite piracy. *See Brady*, 672 F. App'x at 800 n.2.  It declined to choose a side but categorized the mutually exclusive view—where § 605 applies only to satellite communications—as the majority view.  *Id.* (citing the First, Third, Fifth, and Seventh Circuits as adopting majority position and Second Circuit as adopting minority position).  Because the allegations here suffice to establish satellite piracy, this court needn't weigh in on § 605's scope.

Aug. 18, 2025) (explaining that "courts in this district have held in similar cases" that plaintiff can't recover under both §§ 553 and 605); *Joe Hand Promotions, Inc. v. Tribelhorne*, No. 11-2041-CM, 2011 WL 2848288, at *1 (D. Kan. July 15, 2011) (same) (collecting cases). Plaintiff here elects to recover damages solely under § 605. Doc. 9-1 at 5.

To establish liability under § 605 "a plaintiff must show: (1) interception of a satellite transmission; (2) lack of authorization; and (3) publication to any person." *Brady*, 672 F. App'x at 801. A party can support an allegation of interception by circumstantial evidence because direct evidence of such "a surreptitious venture" may prove "understandably . . . hard to come by." *Id.* (quotation cleaned up). And our Circuit found that a satellite dish attached to an outer wall of a bar suffices to create a "logical inference" that "someone at the bar intercepted a satellite transmission[.]" *Id.*

The court concludes there's a sufficient basis in the pleadings and plaintiff's submitted evidence to satisfy all three elements here. *First*, plaintiff's auditor attested to observing a satellite dish on the roof of the establishment and taking a picture of it. Doc. 9-10 at 1 (2023 Aaron Aff.). The presence of the dish creates the "logical inference" that someone "intercepted a satellite transmission"—the first element. *Brady*, 672 F. App'x at 801. *Second*, plaintiff had the sole and exclusive license to authorize the public display of the nine programs at issue. Doc. 1 at 3 (Compl. ¶ 7); Doc. 9-2 at 1–2 (Hand Decl. ¶ 3). Defendants neither contracted with plaintiff to receive authorization nor paid the proper commercial sublicense fees. Doc. 1 at 3 (Compl. ¶ 9); Doc. 9-2 at 2 (Hand Decl. ¶ 11). So, defendants lacked authorization—satisfying the second element. Doc. 9-2 at 2 (Hand Decl. ¶ 13). *Finally*, defendants nonetheless broadcast the programs, advertising as much on social media. Doc. 1 at 5 (Compl. ¶ 13); Doc. 9-10 (2023 Aaron Aff.); Doc. 9-11 (2024 Aaron Aff.). Indeed, plaintiff submitted Facebook and Instagram

posts for the accounts "Trotter's on the River" and "trottersontheriver," respectively, advertising the upcoming programs' broadcasts. Doc. 9-13 at 2–12 (Ex. A). These facts satisfy the publication requirement—the third element. These unchallenged facts thus "constitute a legitimate cause of action" under § 605. *Bixler*, 596 F.3d at 762 (quotation cleaned up).

One final issue warrants consideration here—individual liability. Plaintiff asserts claims against both an individual and an LLC. Our Circuit briefly addressed the question whether "mere ownership of the offending entity" creates § 605 liability for an individual. *Brady*, 672 F. App'x at 801 (quotation cleaned up). The Circuit acknowledged that some district courts, when evaluating § 605 liability against both a corporate and individual defendant, "have required a showing that the [individual] defendant had a right and ability to supervise the violations" and "an obvious and direct financial interest in the piracy." *Id.* at 801–02 (quotation cleaned up). Courts call this the vicarious liability theory. *See, e.g.*, *Joe Hand Promotions, Inc. v. Stateline Bar & Grill LLC*, No. 18-CV-02789-REB-NYW, 2019 WL 5095742, at *6 (D. Colo. July 5, 2019), *report and recommendation adopted*, 2019 WL 5095646 (D. Colo. Aug. 6, 2019); *J & J Sports Prods., Inc. v. Chavez*, No. 17-cv-166-JED-JFJ, 2018 WL 5660757, at *6 (N.D. Okla. Sept. 18, 2018). Courts also have applied a theory of direct authorization to support individual liability. *Chavez*, 2018 WL 5660757, at *5 (analyzing individual and LLC liability for bar's § 605 violation on default judgment motion). For example, a court could find "circumstantial evidence raising an inference of direct authorization" by an individual owner where an "investigators' affidavits indicat[ed] that [the individual owner] was present" on the day the establishment broadcast the offending program. *Id.*

Here, individual liability properly arises under either theory. *First*, take vicarious liability. "Courts have held that allegations . . . that the individual defendants were officers or

10

directors of the intercepting corporate entity is sufficient to give rise to vicarious liability when accompanied by affirmative allegations that the specific defendants had supervisory authority over the course of the business's operations." *Stateline*, 2019 WL 5095742, at *6. Here, plaintiff alleges that Charles H. Trotter "was a member, manager, officer, [or] director . . . of the entity owning and operating the Establishment" and he "had a right and ability to supervise the activities of the Establishment." Doc. 1 at 2 (Compl. ¶ 5.c.–d.). Taking these factual allegations as true—as the court must at default judgment, *Archer*, 64 F. App'x at 679—they provide a sufficient basis to establish liability for the individual defendant. *Second*, take direct authorization. Plaintiff's auditor attested to the owner's presence in the establishment when it broadcast program UFC 291: Poirer v. Gaethje. Doc. 9-10 at 1 (2023 Aaron Aff.). Courts have considered such "circumstantial evidence" sufficient to "rais[e] an inference of direct authorization[.]" *Chavez*, 2018 WL 5660757, at *5. Either theory thus supports default judgment against Mr. Trotter individually is appropriate here.

Concluding the "unchallenged facts constitute a legitimate cause of action" against both defendants, the court moves to the question of damages. *Bixler*, 596 F.3d at 762 (quotation cleaned up).

**V.      Damages**

At default judgment, a court may award damages "only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *DeMarsh*, 2009 WL 3720180, at *2 (quotation cleaned up). The "court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for default judgment." *Mathiason*, 187 F. Supp. 3d at 1277 (quotation cleaned up). What's more, an award of post-judgment interest "achieves the statutory goal of compensating the plaintiff while

removing defendant's incentive to delay payment of the judgment." *Id.* at 1281 (quotation cleaned up) (awarding post-judgment interest on default judgment under 28 U.S.C. § 1961(a)).

Under § 605, an aggrieved party is entitled to recover either the actual damages—including the licensor's lost revenue and the pirate's profits—or statutory damages totaling between $1,000 and $10,000 per violation. 47 U.S.C. § 605(e)(3)(C)(i)(I–II). "Section 605 does not define the term 'violation,' but courts have generally interpreted the showing of a single event on a single night as one violation." *Joe Hand Promotions, Inc. v. Polo Bar & Grill, Inc.*, No. 22-01011-EFM-RES, 2022 WL 873421, at *1 (D. Kan. Mar. 24, 2022) (quotation cleaned up). The statute also permits the court—in its discretion—to enhance the damages award by up to $100,000 per violation if it determines "that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain[.]" § 605(e)(3)(C)(ii). Plaintiff here seeks both statutory damages under § 605(e)(3)(C)(i) and enhanced damages under § 605(e)(3)(C)(ii). The court addresses each, in turn, below.

### A. Statutory Damages

Plaintiff seeks statutory damages in the amount of $15,297.50. Doc. 9-1 at 6. Courts have used a variety of methods to calculate statutory damages under § 605, including: "awarding a flat sum; awarding the amount the defendant would have paid to purchase the broadcast; and multiplying the number of patrons at the establishment by some figure set by the court." *Uno Mas*, 2025 WL 2390417, at *2. The court adopts the second approach here because the evidence submitted by plaintiff—and the statutory damages sought by plaintiff's request—best align with the amount-to-purchase-broadcast approach. "In assessing the reasonableness of [the statutory damages] amount, the court considers the licensing fee that defendants would have paid to plaintiff based on the potential occupancy of the space, any cover charge paid by the patrons in attendance on the night of the program, and any profits associated with the purchase of food and

drink during the program." *Joe Hand Promotions, Inc. v. Pete's Fan Zone LLC*, No. 24-cv-00405-DDD-MDB, 2025 WL 3242373, at *5 (D. Colo. Aug. 20, 2025) (quotation cleaned up), *report and recommendation adopted*, 2025 WL 3242376 (D. Colo. Sept. 4, 2025).

Plaintiff asserts—albeit without showing its work—that the requested $15,297.50 equals "the total legal licensing fees Defendants should have paid for the events." Doc. 9-1 at 9. Later, plaintiff explains this amount as the "total profit" defendants saw "before the [e]vents even began" and it references rate cards attached as exhibits. *Id.* at 11. Following this faint trail of breadcrumbs, the court deciphers plaintiff's equation. Plaintiff uses the capacity of defendants' establishment and the commercial sublicense fee for each of the relevant years—as shown on the attached rate cards—to calculate the amount defendants would have paid to purchase the broadcasts. Plaintiff's auditor estimated the establishment's capacity at 150–160 people. Doc. 9-10 at 2 (2023 Aaron Aff.); Doc. 9-11 at 2 (2024 Aaron Aff.). The rate cards indicate that plaintiff would have charged $1620 for a capacity of 151-175 people for each of the UFC programs. *See* Doc. 9-6 at 1; Doc. 9-7 at 1; Doc. 9-8 at 1. The rate for the sole boxing pay-per-view broadcast, Jake Paul v. Nate Diaz, came in at $2,337.50 for the same capacity. Doc. 9-9 at 1. A little quick math—multiplying the UFC rate by the eight UFC programs and adding the one boxing broadcast rate—totals plaintiff's requested statutory damage amount—$15,297.50. The court thus finds plaintiff's requested amount appropriate. *See Stateline*, 2019 WL 5095742, at *7 (finding just and proper statutory damages award "approximating the concomitant licensing fees" the establishment "would have paid if it had properly licensed the matches").

### B.     Enhanced Damages

In addition to its statutory damages, plaintiff requests enhanced damages in the amount of $76,487.50. Doc. 9-1 at 11. The statute permits enhanced damages—at the court's discretion—for willful violations committed for the purpose of "commercial advantage or private financial

13

gain[.]" § 605(e)(3)(C)(ii).  The social media advertising for eight of the nine broadcasts suggests that defendants willfully violated the statute for commercial advantage or private financial gain.  *See* Doc. 9-13 at 2–12 (Ex. A); *see also Pete's Fan Zone LLC*, 2025 WL 3242373, at *6 ("The advertising of these events supports the claim that Defendant's violation was committed willfully, and for the purpose of commercial advantage and/or financial gain.").  So does defendants' repeated exhibition of the matches.  *See Stateline*, 2019 WL 5095742, at *8 ("[T]he court finds that the unlawful exhibition of the matches was willful—for one cannot unscramble[] an encrypted satellite signal and show a match without intending to do so, particularly repeatedly[.]").  In sum, the court concludes that enhanced damages are appropriate in this case.  This conclusion leaves one more question:  how large of an enhanced penalty should the court impose?

Courts have consulted five factors to determine the amount of enhanced damages under § 605:

(1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) advertising of the broadcast; (4) charging of a cover charge or premiums for food and drinks; and (5) plaintiff's significant actual damages.

*Uno Mas*, 2025 WL 2390417, at *3 (quotation cleaned up).  Applying the factors here, plaintiff has alleged repeated violations over two years.  Doc. 1 at 2 (Compl. ¶ 3).  And for eight of the nine violations, plaintiff has submitted evidence of social media advertising ahead of the broadcast.  Doc. 9-13 at 2–12 (Ex. A) (screenshots of Facebook and Instagram advertising for all broadcasts except UFC 309).  But there's no allegation or evidence of a cover charge.  Indeed, plaintiff's auditor attested that the establishment didn't exact a cover charge on the two occasions when he attended the programs' broadcasts.  Doc. 9-10 at 1 (2023 Aaron Aff.); Doc. 9-11 at 1 (2024 Aaron Aff.).  And, although the social media ads identify food and drink deals, *see*

*generally* Doc. 9-13 (Ex. A), there's nothing to indicate that the establishment offered food or drink at a premium price.  As for the fifth factor, plaintiff argues convincingly that it has experienced intangible harm in a loss of goodwill.  Doc. 9-1 at 8.  But it's not clear that these intangible harms would qualify as actual damages under factor five.  Nor does plaintiff argue, much less demonstrate, that they would.  Considering the relative balance of these factors, the court concludes substantial enhanced damages are warranted to deter future violations, but not in the amount plaintiff requests—$76,487.50.

Plaintiff would have the court make an enhanced damage award that represents five times the statutory damages amount.  *Id.* at 11.  Plaintiff asserts that such an award is "in line with previous damages awards in this Court[.]"  *Id.*  But the enhanced damages in the case plaintiff cites in support came in at *triple* the statutory damages amount—not *quintuple*.  *See id.* at 11 n.1 (citing *Tribelhorne*, 2011 WL 2848288, at *2–3); *see also Uno Mas*, 2025 WL 2390417, at *3 (our court trebling statutory damages amount to calculate enhanced damages under § 605).  And in another case, our court limited the enhanced damages to $2,000 per violation, finding that amount "sufficient to punish Defendants for their illegal conduct and deter future violations[.]"  *Polo Bar & Grill*, 2022 WL 873421, at *2.  The $2,000 figure represented just double the statutory damages awarded in that case.  *Id.*

To be sure, those doubling and trebling District of Kansas cases involved fewer violations than are at issue here.  *See Uno Mas*, 2025 WL 2390417, at *1 (alleging one violation); *Polo Bar & Grill*, 2022 WL 873421, at *1 (alleging two violations); *Tribelhorne*, 2011 WL 2848288, at *1 (alleging one violation).  But, looking across our Circuit to cases where the number of violations equaled or even exceeded the number alleged here, the enhanced damages awards remained significantly lower than plaintiff's requested amount—and involved smaller multipliers.  *See,*

*e.g.*, *Pete's Fan Zone LLC*, 2025 WL 3242373, at *5–6 (recommending enhanced damages amount of $40,000—quadruple the statutory damages award—for nine alleged violations); *Stateline*, 2019 WL 5095742, at *4, *8 (recommending enhanced damages of $44,110—treble the statutory damages award—for twelve alleged violations where establishment "routinely advertised these matches over Facebook"). Indeed, in our Circuit, the largest enhanced damage award the court's research discovered came in at $50,000. *Joe Hand Promotions, Inc. v. Carter*, No. 18-cv-01105-RM-MEH, 2018 WL 3640713, at *4 (D. Colo. Aug. 1, 2018), *report and recommendation adopted*, 2018 WL 6791095 (D. Colo. Oct. 1, 2018). But there, defendants had avoided a sublicensing fee of $30,000—almost twice the amount defendants avoided here. *Id.* So, the Colorado court reasoned, "awarding enhanced damages in any amount less than $20,000.00 would encourage Defendants to avoid paying the required fee in the future." *Id.* Plus, defendants had charged a cover and "realize[d] significant profit" through "increased food and beverage sales" in a venue with a capacity of 1,000 people. *Id.* Here, there's affirmative evidence that defendants *didn't* charge a cover. Doc. 9-10 at 1 (2023 Aaron Aff.); Doc. 9-11 at 1 (2024 Aaron Aff.). And when plaintiff's auditor attended, he estimated crowds of 45–65 people for the first fight, Doc. 9-10 at 2 (2023 Aaron Aff.), and 120–150 people for the second fight, Doc. 9-11 at 2 (2024 Aaron Aff.). An establishment with a significantly smaller capacity and even smaller attendance necessarily sees far less profit than the establishment at issue in *Carter*. In other words, *Carter*'s aggravating circumstances—which served to justify the $50,000 penalty—just don't exist in the case at hand.

      The court remains mindful of the balance it must strike. It's sympathetic to plaintiff's appeals for deterrence. But it nonetheless must "strive[] to balance the goal of deterrence with a desire not to put a small restaurant out of business." *Tribelhorne*, 2011 WL 2848288, at *2. And

so, the court settles on an enhanced damages amount of $45,892.50—which represents treble the statutory damages. It deems this a just amount for two reasons. *First*, this amount approximately corresponds to the enhanced damages amounts courts have applied in cases with similar numbers of violations, without reaching the aggravated amount in *Carter*. *See Pete's Fan Zone LLC*, 2025 WL 3242373, at *5–6 (enhanced damages of $40,000 for nine violations); *Stateline*, 2019 WL 5095742, at *3, *8 (enhanced damages of $44,110 for twelve violations). *Second*, trebling the statutory damages is an approach courts apply with notable frequency in this type of case. *See Stateline*, 2019 WL 5095742, at *8 ("Trebling the statutory damages is an accepted practice in calculating the enhanced damages."); *see also Uno Mas*, 2025 WL 2390417, at *3 (trebling statutory damages); *Joe Hand Promotions, Inc. v. 2012 Larimer St. LLC*, No. 20-cv-0957-WJM-KLM, 2021 WL 2913025, at *5 (D. Colo. July 12, 2021) (same); *Joe Hand Promotions, Inc. v. Purple Pig, LLC*, No. 17-cv-01056-PAB-NRN, 2018 WL 4360538, at *4 (D. Colo. Sept. 13, 2018) (same); *DIRECTV, LLC v. Taylor*, No. 13-cv-2551-WJM-CBS, 2014 WL 3373448, at *3 (D. Colo. July 10, 2014) (same); *Tribelhorne*, 2011 WL 2848288, at *2–3 (same); *Kingvision Pay-Per-View, Ltd. v. Gutierrez*, 544 F. Supp. 2d 1179, 1185 (D. Colo. 2008) (same), *report and recommendation adopted*, 2008 WL 583817 (D. Colo. Feb. 28, 2008).

### VI.     Attorney Fees and Costs

Finally, plaintiff seeks an award of $1,500 in attorney fees and $595 in costs. Doc. 9-1 at 13. The court finds this award appropriate under the statute and reasonable in amount. Section 605 contemplates recovery of costs, including reasonable attorney fees, to an aggrieved, prevailing party. *See* § 605(e)(3)(B)(iii). The court already determined that plaintiff is an aggrieved party under the statute. And securing a default judgment typically qualifies a plaintiff as the prevailing party for purposes of costs and fee awards. *See Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1178 (D. Kan. 2018). Also, the requested amount is reasonable. Our court has found

similar fees and costs reasonable in similar cases. *See Uno Mas,* 2025 WL 2390417, at *3 (finding $1,500 in attorney fees and $821.40 in costs reasonable); *Polo Bar & Grill*, 2022 WL 873421, at *2 (finding attorney fees and costs totaling $1,902 reasonable). What's more, plaintiff identifies his rate as $250/hour. Doc. 9-12 at 2 (Umansky Decl. ¶ 11). This rate easily qualifies as reasonable when compared with other rates in the region. *See, e.g.*, *Marmon v. RPS Auto, LLC*, No. 22-2381-KHV, 2024 WL 1961432, at *4–5 (D. Kan. May 3, 2024) (finding $475/hour reasonable rate in Kansas City legal community); *Roadbuilders Mach. & Supply Co. v. Sandvik Mining & Constr. USA, LLC*, No. 22-cv-2331-HLT-TJJ, 2024 WL 757154, at *5 (D. Kan. Feb. 23, 2024) (collecting cases and noting that "[o]ther judges in this District have in recent years approved hourly rates up to $505 for the Kansas City market."). The court thus awards plaintiff attorney fees and costs totaling $2,095.

### VII.     Conclusion

The court concludes that the pleadings furnish a sufficient basis for a default judgment in favor of plaintiff as an aggrieved party under 47 U.S.C. § 605. It awards plaintiff its requested statutory damages, treble those damages as enhanced damages, and plaintiff's requested attorney fees and costs.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff Joe Hand Promotions, Inc.'s Motion for Default Judgment (Doc. 9) is granted in part and denied in part. The court directs the Clerk of the Court to enter judgment for plaintiff against defendants Trotter's on the River, LLC and Charles H. Trotter as follows: $15,297.50 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II); $45,892.50 in enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii); and $2,095 in costs and attorney fees under 47 U.S.C. § 605(e)(3)(B)(iii). The court also awards plaintiff any post-judgment interest which may accrue on the awarded amounts.

**IT IS SO ORDERED.**

**Dated this 23rd day of December, 2025, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**
